UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARION COLLIER, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Case No. 11 C 6209 |
| ) | Judge Joan H. Lefkow |
| REAL TIME STAFFING SERVICES, INC., doing business as SelectRemedy, ) ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

On September 7, 2011, plaintiff Darion Collier filed a putative class action against defendant Real Time Staffing Services, Inc., doing business as SelectRemedy ("SelectRemedy"), alleging that SelectRemedy violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, by declining to hire Collier based on a consumer credit report without first providing Collier with (1) a pre-adverse action disclosure that included a copy of Collier's consumer report; (2) a written description of Collier's rights under the FCRA; and (3) a pre-adverse action opportunity to dispute the accuracy of the reported information. SelectRemedy now moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq*. For the reasons set forth herein, SelectRemedy's petition to compel arbitration will be granted and its motion to dismiss for lack of subject matter jurisdiction will be denied.

## BACKGROUND

On or about July 26, 2011, Collier completed an electronic job application to work for SelectRemedy. As part of his employment application, Collier signed a "Mutual Agreement to Arbitrate" ("Arbitration Agreement"), which states in relevant part:

> If SelectRemedy and I are unable to resolve any dispute informally, I agree to having the dispute submitted and determined by binding arbitration in conformity with the procedures of the Federal Arbitration Act and the California Arbitration Act . . . . Such disputes may include but not be limited to . . . those claims whether in law or equity, which either party could assert, at common law or under statute, rule, regulation, order of law, whether federal, state, or local, except for those . . . precluded from arbitration by law.

(Def.'s Ex. A1 at 7.) Collier also signed an acknowledgment stating that he would become an employee upon commencing a paid assignment with a client of SelectRemedy, that his employment with SelectRemedy would be on an at-will basis, and that SelectRemedy was free to alter the terms and conditions of his employment at any time. (*Id.* at 6.) After reviewing Collier's application, SelectRemedy chose not to hire Collier. Collier then filed the instant lawsuit.

## LEGAL STANDARD

The FAA governs questions of arbitrability in both state and federal courts. *Jain* v. *de Mere*, 51 F.3d 686, 688 (7th Cir. 1995). The FAA provides that an arbitration clause in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA's central purpose is to ensure that private agreements to arbitrate are enforced according to their terms." *Mastrobuono* v. *Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53–54, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995) (internal quotation marks and

citation omitted). "[W]hen a contract contains an arbitration clause, a strong presumption in favor of arbitration exists and courts have no choice but to order arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *CK Witco Corp.* v. *Paper Allied Indus.,* 272 F.3d 419, 421–22 (7th Cir. 2001) (quoting *AT & T Techs., Inc*. v. *Commc'ns Workers*, 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)).

Under the FAA, a court may compel arbitration where there is (1) a written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate. *Zurich Am. Ins. Co.* v. *Watts Indus., Inc*., 417 F.3d 682, 687 (7th Cir. 2005). "To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation." *Gore* v. *Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). Under Illinois law, "[a]n agreement to arbitrate is treated like any other contract," *Vassilkovska* v. *Woodfield Nissan, Inc*., 830 N.E.2d 619, 623, 358 Ill. App. 3d 20, 294 Ill. Dec. 207 (2005), in other words, there must be "offer, acceptance and consideration." *Id.* at 624. The party opposing arbitration bears the burden of establishing why the arbitration provision should not be enforced. *Green Tree Fin. Corp. Ala.* v. *Randolph*, 531 U.S. 79, 91–92, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000).

## ANALYSIS

Collier argues that the Arbitration Agreement is unenforceable because (1) the agreement to arbitrate was not mutual and SelectRemedy provided no other consideration to support the agreement; and (2) SelectRemedy disclaimed any employment agreement with Collier by stating that his employment was at-will. Collier also argues that if the court determines that the

3

Arbitration Agreement is enforceable, then the arbitrator must decide in the first instance whether the parties agreed to arbitrate class claims.

I.      **Whether the Arbitration Agreement is Enforceable**

Collier argues that the Arbitration Agreement lacks consideration because SelectRemedy did not agree to arbitrate its claims against Collier. "It is a basic tenet of contract law that in order for a promise to be enforceable against the promisor, the promisee must have given some consideration for the promise." *Gibson* v. *Neighborhood Health Clinics, Inc*., 121 F.3d 1126, 1130 (7th Cir. 1997). "Often, consideration for one party's promise to arbitrate is the other party's promise to do the same." *Id.* at 1131. SelectRemedy's commitment to arbitrate its claims is evidenced by the Arbitration Agreement, titled *"Mutual* Agreement to Arbitrate." (Def.'s Ex. A1 at 7 (emphasis added).) Moreover, the Arbitration Agreement explicitly states that it applies to "any dispute . . . which *either party* could assert." *Id.* (emphasis added).

Unlike in *Gibson*, where the arbitration agreement contained "no promise on [the employer's] part to submit claims to arbitration" and was "worded entirely in terms of [the employee's] obligation to submit her claims to arbitration (using phrases such as 'I agree' 'I understand' 'I am waiving')," here, both parties have mutually agreed to arbitrate claims that either party could assert. *Gibson*, 121 F.3d at 1131. The Arbitration Agreement is therefore supported by adequate consideration. *See, e.g., Domin* v. *River Oaks Imps., Inc.*, No. 11 C 3876, 2011 WL 5039865, at *2 (N.D. Ill. Oct. 24, 2011) ("[W]here an arbitration agreement binds both parties, there is sufficient consideration.") (applying Illinois law); *Truckenbrodt* v. *First Alliance Mortg. Co.*, No. 96 C 1822, 1996 WL 422150, at *2 (N.D. Ill. July 24, 1996) ("All the consideration that is required for one party's promise to arbitrate is 'the other party's promise to

4

arbitrate at least some specified class of claims.'") (applying Illinois law, quoting *Lopez* v. *Plaza Fin. Co.*, No. 95-C-7567, 1996 WL 210073, at *4 (N.D. Ill. April 25, 1996)). The Arbitration Agreement is clear on its face, and the court need not consider whether SelectRemedy provided any additional consideration because a mutual agreement to arbitrate is sufficient. *See Matterhorn, Inc.* v. *NCR Corp.*, 763 F.2d 866, 869 (7th Cir. 1985) ("If the agreement of one party to arbitrate disputes is fully supported by the other party's agreement to do likewise, there is no need to look elsewhere in the contract for consideration for the agreement to arbitrate.").[1]

Collier also argues that, even if the agreement to arbitrate was mutual and therefore supported by consideration, SelectRemedy's promise was illusory because it promised nothing in exchange for Collier's agreement. That is, SelectRemedy retained the right to change the terms and conditions of Collier's employment, including the manner in which disputes could be resolved, rendering even the promise to arbitrate illusory.[2] This argument is reasonable but it has not been accepted among the appellate courts, as is reflected in *Gibson*, on which Collier relies. *See* 121 F.3d at 1132 ("[T]here ought to be realistic requirements for achieving a valid arbitration agreement in the context of employment. These requirements must recognize that we are dealing in most cases with a contract of adhesion: agree to arbitrate or lose your job.") (Cudahy, J., concurring). In *Penn* v. *Ryan's Family Steak Houses, Inc.*, 269 F.3d 753, 761 (7th

---

[1] Collier cites *Oguejiofor* v. *Nissan*, No. C-11-0544 EMC, 2011 WL 3879482 (N.D. Cal. Sept. 2, 2011), as rejecting the employer's argument that an arbitration agreement in an employment application was supported by adequate consideration. The court, however, seemed to accept the argument: "It would appear that the arbitration agreement might apply even if Mr. Oguejiofor had not been hired, *e.g.,* if he tried to sue for discriminatory refusal to hire." *Id.* at *2.

[2] The "At-Will" section of the agreement states: "Terms and conditions of employment including promotions, change in job duties, locations, and compensation can be changed at the sole discretion of SelectRemedy, at any time, with or without cause, advance notice, or stated reason." (Def.'s Ex. A1 at 6.)

5

Cir. 2001), the Seventh Circuit drew the line on deference to employee arbitration agreements where an employee was required as a condition of employment to sign an arbitration agreement with an employer-funded enterprise offering employment dispute resolution services to employers. Although the enterprise promised "to provide an arbitration forum, Rules and Procedures, and a hearing and decision based on any claim or dispute," the agreement was so vague that it allowed the vendor to fulfill its promise by providing the parties with a "coin toss." *Id*. at 759. The agreement here, by contrast, provided that the arbitration would be conducted in conformity with the procedures of the FAA and the California Arbitration Act. (Def.'s Ex. A1 at 7.) Beyond *Gibson* and *Penn*,[3] Collier provides scant support for his position that employment at-will language, which is standard in most employment contracts, renders an otherwise enforceable promise to arbitrate illusory, and the court declines to so hold. *See, e.g., Tinder* v. *Pinkerton Security*, 305 F.3d 728, 736 (7th Cir. 2002) (rejecting employee's claim that employer's agreement to arbitrate was "illusory because [the employer] reserved the right to modify or terminate its policies at any time") (applying Wisconsin law); *Wilkerson* v. *Serv. Corp. Int'l*, No. IP 02–0982–C B/S, 2003 WL 21052128, at *3 (S.D. Ind. Apr. 2, 2003) ("Where, as here, the employer provides independent consideration for the arbitration provision—continued employment and an agreement to be bound by any arbitration decision—and where, as here the employee agrees to arbitrate the enumerated claims, the arbitration provision is consistent with employment at will.") (applying Indiana law).

## II. Arbitrability of Class Claims

---

[3] Collier's reliance on *Dwyer* v. *Graham*, 457 N.E.2d 1239, 1241, 99 Ill. 2d 205, 75 Ill. Dec. 680 (1983), is not helpful because that case arose in an entirely different context. It dealt with an indefinite term of a lease, resulting in a holding that the lease was terminable at will by either party.

Finally, Collier argues that the arbitrator must determine in the first instance whether the Arbitration Agreement encompasses class claims because the Arbitration Agreement suggests that the parties intended to arbitrate class claims. SelectRemedy, on the other hand, argues that the Arbitration Agreement is silent as to class claims, and as such, the court may only refer Collier's individual claim to arbitration. The Supreme Court addressed this very issue in *Green Tree Financial Corporation* v. *Bazzle*, although the case failed to produce a majority. 539 U.S. at 450–454. As explained by the Seventh Circuit,

> The [*Bazzle*] plurality opinion (Breyer, J., joined by Scalia, Souter, and Ginsburg, JJ.) concluded that arbitrators are entitled to make the initial decision about whether class arbitration has been authorized. 539 U.S. at 450–54, 123 S. Ct. 2402. Chief Justice Rehnquist, joined by Justices O'Connor and Kennedy, thought that a court should make the initial decision. *Id.* at 456–60, 123 S. Ct. 2402. Justices Stevens and Thomas participated but did not address the question.

*Blue Cross Blue Shield of Mass., Inc.* v. *BCS Ins. Co.*, 671 F.3d 635, 639 (7th Cir. 2011). Similar to the Supreme Court, the Seventh Circuit has yet to reach the issue as it relates to class claims.

In *Employers Insurance Company of Wausau* v. *Century Indemnity Company*, however, the Seventh Circuit held that "the question of whether an arbitration agreement forbids *consolidated* arbitration is a procedural one, which the arbitrator should resolve." 443 F.3d 573, 577 (7th Cir. 2006) (emphasis added); *see also Howsam* v. *Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) ("[P]rocedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." (internal quotation marks and citation omitted, emphasis in original)). Although *Wausau* considered the arbitrability of consolidated claims, not class claims, the Seventh Circuit

7

in *Champ* v. *Siegel Trading Company, Inc.*, 55 F.3d 269, 274–75 (7th Cir. 1995), looked to consolidated arbitration cases to guide its analysis of class claims issues. *See also* 1 COMMERCIAL ARBITRATION § 20:44 ("consolidation in arbitration is analogous to class arbitration").

The Supreme Court recently clarified the role arbitrators may play in resolving class claims by holding that arbitrators may entertain class actions only where the parties have authorized such a procedure by contract. *Stolt-Nielsen S.A.* v. *Animalfeeds Int'l Corp.,* --- U.S. ----, 130 S. Ct. 1758, 1775, 176 L. Ed. 2d 605 (2010). In *Stolt-Nielsen*, two sophisticated shipping companies entered into a maritime contract, known as a charter party, whereby they agreed to submit their claims to binding arbitration. AnimalFeeds brought an anti-trust action against Stolt-Nielsen and sought arbitration on behalf of the class. *Id.* at 1764–65. The charter party was silent as to the arbitrability of class claims, and the parties stipulated that they had not reached an agreement on the issue. *Id.* at 1766. Nevertheless, a panel of arbitrators decided, based on public policy concerns, that the arbitration clause allowed for class arbitration. *Id.* at 1770. The Supreme Court reversed, stating that "the differences between bilateral and class-action arbitration are too great for arbitrators to presume, consistent with their limited powers under the FAA, that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." *Id.* at 1776. Reiterating "the basic precept that arbitration 'is a matter of consent, not coercion,'" *id.* at 1773 (quoting *Volt Info. Scis., Inc.* v. *Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989)), the Court concluded that "a party may not be compelled under

the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Id.* at 1775 (emphasis in original).

In affirming this court's post-*Stolt-Nielsen* decision to permit an arbitrator to determine in the first instance whether an arbitration agreement, which was silent on its face, allowed arbitration of consolidated claims, the Seventh Circuit explained the impact of *Stolt-Nielsen*,

> [Here,] the district court would have allowed the arbitrators to decide in the first instance whether a consolidated proceeding is permissible under the contracts and, if so, whether it is appropriate. That's the upshot of *Wausau*, and *Stolt-Nielsen* does not hold otherwise. It reached the Supreme Court after arbitration had been concluded. Whether the arbitrators had exceeded their powers, and thus whether the award could be set aside under 9 U.S.C. § 10(a)(4), was the only question presented by the petition for certiorari. . . . [T]he Court in *Stolt-Nielsen* did not deny that class-wide arbitration is still 'arbitration'; it just held that certifying a class exceeds an arbitrator's powers unless the parties have consented to class procedures. If class-wide arbitration is still 'arbitration,' so is consolidated arbitration.

*Blue Cross Blue Shield of Mass., Inc.*, 671 F.3d at 638–39. SelectRemedy argues that *Stolt-Nielsen* forecloses an arbitrator's ability to determine the arbitrability of class claims in the first instance and therefore only Collier's individual claim may be referred to arbitration. This is not the reading of *Stolt-Nielsen* endorsed by the Seventh Circuit. Rather, "[t]he only question that a court should address before arbitration starts is whether the parties have agreed to arbitrate at all." *Id.* at 639.

Having concluded that the parties in this case so agreed, the court holds that it is up to "the arbitrators themselves [to] resolve procedural questions in the first instance." *Id.*; *see also Guida* v. *Home Sav. of Am., Inc.*, 793 F. Supp. 2d 611, 617–18 (E.D.N.Y. 2011) ("There are a number of cases . . . in which courts have concluded, subsequent to *Stolt-Nielsen*, that the ability

9

of plaintiffs to arbitrate on a class basis is an issue to be determined by the arbitrator.") (collecting cases).[4] The proper course of action, therefore, is to stay proceedings pending arbitration.[5] *See* 9 U.S.C. § 3; *OCMC, Inc.* v. *Billing Concepts, Inc.*, No. 1:05-CV-1396-DFH-TAB, 2006 WL 1234884, at *5 (S.D. Ind. May 3, 2006) ("Ordinarily, when a court finds that a dispute falls within the scope of a valid agreement to arbitrate, the proper course of action under the FAA is not to dismiss the case but to stay judicial proceedings and to compel arbitration.") (collecting cases).[6]

## ORDER

For the foregoing reasons, the court grants defendant's petition to compel arbitration [#17]. In accordance with section 3 of the FAA, the court stays the litigation pending arbitration. The motion to certify the class [#6] is denied without prejudice and with leave to reinstate should the class claims proceed in this court. Defendant's motion to dismiss [#17] is, therefore, denied.

ENTER:     Dated: April 11, 2012

_____
JOAN HUMPHREY LEFKOW
United States District Judge

---

[4] Judge Hibbler came to a different conclusion in *Goodale* v. *George S. May Int'l Co.*, No. 10 C 5733, 2011 WL 1337349, at **2–3 (N.D. Ill. Apr. 5, 2011), as did Judge Zagel in *Watkins* v. *New Koosharem Corp.*, No. 11-CV-5210, Dkt. #37 (N.D. Ill. Mar. 9, 2012).

[5] The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Collier's claims occurred in this district.

[6] In concluding that the arbitrator must decide whether the Arbitration Agreement provides for the arbitration of class claims, the court declines to consider if or how the National Labor Relations Board's recent opinion in *D.R. Horton, Inc.*, 357 N.L.R.B. No. 184 (Jan. 3, 2012), affects the claim asserted in this case.